UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO.:

SYBEL W. LEE, 602 N.W 100TH
STREET MIAMI, FL 33150

MARY MCMINN, 601 NW 99TH
STREET MIAMI, FL 33150

NATHANIEL WILLIAMS, 600 N.W.
116TH STREET MIAMI, FL 33150
Plaintiff(s)

v.

MIAMI-DADE COUNTY

STATE OF FLORIDA DEPARTMENT
OF TRANSPORTATION,
Defendant(s).

_____/

## **COMPLAINT**

COME NOW the Plaintiffs, SYBEL W. LEE, MARY MCMINN, and NATHANIEL

WILLIAMS, by and through undersigned counsel, and sue the Defendants, MIAMI-DADE

COUNTY and the STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION, and

as grounds therefore would state:

1.      This is an action for inverse condemnation (Federal), inverse condemnation (State),

breach of contract, tortious interference with an advantageous business relationship, and

violation of the Federal-Aid Highway Act for damages in excess of $75,000, exclusive of

interest, attorneys' fees and costs.

2.      This court has jurisdiction over the parties and this action pursuant to U.S. Const. Article

3, Section 2, U.S. Const. 5th and 14th Amendment, 18 U.S. Code §1964, 23 U.S.C.A. § 101 et

seq., 28 U.S. Code §1331 and 1332, 31 U.S. Code §3729, 42 U.S. Code §§1981, 1983 and 1991.

3.      Defendants were noticed pursuant to Fla. Stat. § 768.28 before filing this action on or about January 12, 2017 (see Exhibit "1").

4.      Plaintiffs demand a jury for all counts.

## COUNT 1 – INVERSE CONDEMNATION – FEDERAL

5.      The Plaintiffs are, senior citizens, and owners of property in Miami-Dade County as follows: Ms. Sybel W. Lee, residing at 602 NW 100th Street, Miami, FL 33150; Ms. Mary McMinn residing at 601 NW 99th Street, Miami, FL 33150; and Mr. Nathaniel Williams residing at 600 NW 116th Street, Miami, FL 33150 all now within arm's reach of the I-95 Noise reduction wall. Ms. McMinn has lived in this home since before the I-95 was even constructed, and this highway has expanded to these property owner's back wall.

6.      The State of Florida, Department of Transportation ('FDOT") built a Noise Reduction Wall within arm's reach of the Plaintiffs' homes. (See Exhibit 2; County Photos for Relocation Estimates)

7.      Because of the State of Florida's construction Plaintiffs can't flush paper in their toilets, their roofs are collapsing, vibration has destroyed the structure, 18-wheelers have landed in their yards in the middle of the night and Miami-Dade County (the "County") refuses to do improvements (i.e. County won't put in sewer because it is aware vibration would destroy it), and the value of the homes have deteriorated to unsaleable values.

8.      The State of Florida (the "State") proposed condemnation of the Plaintiffs' homes, the Plaintiffs' agreed, but the State never followed through with the purchasing of new homes and relocation of Plaintiffs. (See Exhibit 3; Right of Way Evaluation).

9.      The State of Florida earmarked $1.2 Million to relocate the Plaintiffs but was convinced by Miami-Dade County to do the distribution as part of building a Linear Park in the location of the Plaintiffs' homes through Miami Dade MPO and Parks Department. (See Exhibit 4; Confirmation of Allocation).

10.     In Miami Dade MPO hearings in 2007 and 2012, both with FDOT in participation, the Miami Dade Commission and MPO confirmed receipt of the $1.2 Million to relocate Plaintiffs' but did not perform. FDOT confirmed allocation to Miami-Dade MPO.

11.     During the July 19, 2012 at a Miami-Dade Metropolitan Planning Organization Board meeting Mr. Zevin Auerbach a Member Municipal Representative advised the Plaintiffs that this matter "smell like corruption" because monies were promised by Miami-Dade County Board of Commissioners, the Miami-Dade County Clerk of the Board of Commissioners, the Metropolitan Planning Organization ("MPO") and then the funds disappeared.

12.     Miami-Dade County Dist. 3 Commissioners and MPO Board Member a Ms. Audrey Edmonson at a July 19, 2012 Metropolitan Planning Organization meeting read and introduced a letter written by Ms. Vivian Donnell Rodriguez who was the Director of the Miami-Dade Parks and Recreational Department to the governing body. Ms. Edmonson read item *5A3* as reported into the video tape record that pertained to project #416-510-1 written on September 25, 2006 as evidence of the misappropriation of county funds by the Parks and Recreational Department and other agencies earmarked by Florida Department of Transportation and the Federal Highway Administration ("FHWA").

13.     A July 19, 2012, MPO Meeting video tape shows Miami-Dade County Commissioner Audrey Edmonson reading a letter from a Ms. Vivian Donnell Rodriguez, where it said "Dear Ms. McGuire who is over the District Six Planning Office for the

Florida Department of Transportation. Ms. Vivian Donnell Rodriguez wrote to Ms. McGuire that the purpose of this letter is to withdraw the Miami- Dade Parks and Recreations Department grant application for the 1-95 Linear Park. The objective of the project was for the department to purchase seven properties adjacent to 1-95 between NW 97th and 100th Street excluding the agreement to also originally included 116th Street as part of the homes being purchased and the county would be demolishing the structures on the site.

14.     The properties were later to be developed into a 1 ½ acre linear park in a residential neighborhood in unincorporated Miami-Dade County, Ms. Rodriguez wrote that these properties are no longer for sale." Miami-Dade County Commissioner Audrey Edmonson put on the record that there was a promise and there were funds approved and granted by FDOT and Miami-Dade County to purchase the  Plaintiff's homes." See Miami-Dade County/MPO Meeting Video Tape dated July 19, 2012 on 5A3 reported at 50:08 minutes. (See Exhibit 5; Rodriquez Withdrawal letter).

15.     Miami-Dade County Commissioner Audrey Edmonson said at the 7/19/2012 MPO Board meeting that "she could not explain in the video why Ms. Vivian Donnell Rodriguez said in her letter that the homes were no longer for sale, since the county initially promised to purchase the Plaintiff's homes because of the safety factors of the 1-95 Noise Abatement Wall expansion project and Linear park."

16.     In 2015, Plaintiffs' Commissioner Audrey Edmunson proposed relocating the Plaintiffs' to rectify the non-distribution, but only at current, nominal value of the homes. By this time the homes were valueless, and the senior citizens would not be able to afford adequate housing.

17.     To complete the cycle of government failing its senior citizens, in 2016 the Plaintiffs made complaints to the FBI, who transferred the matter to Miami-Dade Office of Inspector General ("OIG"), who then dropped the matter without notifying Plaintiffs because OIG was told relied on Vivian Rodriguez letter that the Plaintiffs no longer wanted to relocate.

18.     Unable to afford representation, Plaintiffs filed a pro se case in the United State Southern District (Case No. 16-23651) but were unable to figure out to serve the Defendants under Fla. Stat. § 768.28 and generally; so, the matter was dismissed by the Honorable Judge Goodman on 3/29/2017 for PAPERLESS ORDER DISMISSING CASE WITHOUT PREJUDICE FOR FAILURE TO SERVE. (see Exhibit 6; Docket Print Out).

19.     The location of the home next to the 1-95 deprive the Plaintiffs of all beneficial use of the properties and has removed all value of the properties.

20.     Funds were confirmed distributed to Miami Dade County to relocate the Plaintiffs in Mr. Oscar Brannon in a meeting with Plaintiffs Carey-Schuler's office, at the time Brannon the assistant to Commission Dr. Barbara Carey-Schuler.

21.     This arrangement was never fulfilled, and these said senior citizens homeowners have been placed in very dangerous, hazardous and unsafe living conditions.

22.     Defendants installation of Noise Reduction Wall and I-95 expansion is a government taking subject to inverse condemnation claims.

WHEREFORE, the Plaintiffs request this Court to declare the State and County's actions as a taking under the Fifth Amendment to the Constitution, determine the value of the taking, and to grant Plaintiffs claims for inverse condemnation. Further, Plaintiffs seek punitive damages as well as their costs and attorney fees.

## COUNT 2 – INVERSE CONDEMNATION – STATE

23.     The Plaintiffs are, senior citizens, and owners of property in Miami-Dade County as follows: Ms. Sybel W. Lee, residing at 602 NW 100th Street, Miami, FL 33150; Ms. Mary McMinn residing at 601 NW 99th Street, Miami, FL 33150; and Mr. Nathaniel Williams residing at 600 NW 116th Street, Miami, FL 33150 all now within arm's reach of the I-95 Noise reduction wall. Ms. McMinn has lived in this home since before the I-95 was even constructed, and this highway has expanded to these property owner's back wall.

24.     The State of Florida, Department of Transportation built a Noise Reduction Wall within arm's reach of the Plaintiffs' homes. (See Exhibit 2; County Photos for Relocation Estimates)

25.     Because of the State of Florida's construction Plaintiffs can't flush paper in their toilets, their roofs are collapsing, vibration has destroyed the structure, 18-wheelers have landed in their yards in the middle of the night and Miami-Dade County (the "County") refuses to do improvements (i.e. County won't put in sewer because it is aware vibration would destroy it), and the value of the homes have deteriorated to unsaleable values.

26.     The State of Florida (the "State") proposed condemnation of the Plaintiffs' homes, the Plaintiffs' agreed, but the State never followed through with the purchasing of new homes and relocation of Plaintiffs. (See Exhibit 3; Right of Way Evaluation).

27.     The State of Florida earmarked $1.2 Million to relocate the Plaintiffs but was convinced by Miami-Dade County to do the distribution as part of building a Linear Park in the location of the Plaintiffs' homes through Miami Dade MPO and Parks Department. (See Exhibit 4; Confirmation of Allocation).

28.     In Miami Dade MPO hearings in 2007 and 2012, both with FDOT in participation, the

Miami Dade Commission and MPO confirmed receipt of the $1.2 Million to relocate Plaintiffs' but did not perform.  FDOT confirmed allocation to Miami-Dade MPO.

29.     During the July 19, 2012 at a Miami-Dade Metropolitan Planning Organization Board meeting Mr. Zevin Auerbach a Member Municipal Representative advised the Plaintiffs that this matter "smell like corruption" because monies were promised by Miami-Dade County Board of Commissioners, the Miami-Dade County Clerk of the Board of Commissioners, the Metropolitan Planning Organization ("MPO") and then the funds disappeared.

30.     Miami-Dade County Dist. 3 Commissioners and MPO Board Member a Ms. Audrey Edmonson at a July 19, 2012 Metropolitan Planning Organization meeting read and introduced a letter written by Ms. Vivian Donnell Rodriguez who was the Director of the Miami-Dade Parks and Recreational Department to the governing body. Ms. Edmonson read item *5A3* as reported into the video tape record that pertained to project #416-510-1 written on September 25, 2006 as evidence of the misappropriation of county funds by the Parks and Recreational Department and other agencies earmarked by Florida Department of Transportation and the Federal Highway Administration (FHWA).

31.     A July 19, 2012, MPO Meeting video tape shows Miami-Dade County Commissioner Audrey Edmonson reading a letter from a Ms. Vivian Donnell Rodriguez, where it said "Dear Ms. McGuire who is over the District Six Planning Office for the Florida Department of Transportation. Ms. Vivian Donnell Rodriguez wrote to Ms. McGuire that the purpose of this letter is to withdraw the Miami- Dade Parks and Recreations Department grant application for the 1-95 Linear Park. The objective of the project was for the department to purchase seven properties adjacent to 1-95 between NW 97th and 100th Street excluding the agreement to also originally included 116th Street as part

of the homes being purchased and the county would be demolishing the structures on the site.

32.     The properties were later to be developed into a 1 ½ acre linear park in a residential neighborhood in unincorporated Miami-Dade County, Ms. Rodriguez wrote that these properties are no longer for sale." Miami-Dade County Commissioner Audrey Edmonson put on the record that there was a promise and there were funds approved and granted by FDOT and Miami-Dade County to purchase the Plaintiff's homes." See Miami-Dade County/MPO Meeting Video Tape dated July 19, 2012 on 5A3 reported at 50:08 minutes. (See Exhibit 5; Rodriquez Withdrawal letter).

33.     Miami-Dade County Commissioner Audrey Edmonson said at the 7/19/2012 MPO Board meeting that "she could not explain in the video why Ms. Vivian Donnell Rodriguez said in her letter that the homes were no longer for sale, since the county initially promised to purchase the Plaintiff's homes because of the safety factors of the 1-95 Noise Abatement Wall expansion project and Linear park."

34.     In 2015, Plaintiffs' Commissioner Audrey Edmunson proposed relocating the Plaintiffs' to rectify the non-distribution, but only at current, nominal value of the homes. By this time the homes were valueless, and the senior citizens would not be able to afford adequate housing.

35.     To complete the cycle of government failing its senior citizens, in 2016 the Plaintiffs made complaints to the FBI, who transferred the matter to Miami-Dade Office of Inspector General ("OIG"), who then dropped the matter without notifying Plaintiffs because OIG was told relied on Vivian Rodriguez letter that the Plaintiffs no longer wanted to relocate.

36.     Unable to afford representation, Plaintiffs filed a pro se case in the United State Southern

District (Case No. 16-23651) but were unable to figure out to serve the Defendants under Fla. Stat. § 768.28 and generally; so, the matter was dismissed by the Honorable Judge Goodman on 3/29/2017 for PAPERLESS ORDER DISMISSING CASE WITHOUT PREJUDICE FOR FAILURE TO SERVE. (see Exhibit 6; Docket Print Out).

37.     The location of the home next to the 1-95 deprive the Plaintiffs of all beneficial use of the properties and has removed all value of the properties.

38.     Funds were confirmed distributed to Miami Dade County to relocate the Plaintiffs in Mr. Oscar Brannon in a meeting with Plaintiffs Carey-Schuler's office, at the time Brannon the assistant to Commission Dr. Barbara Carey-Schuler.

39.     This arrangement was never fulfilled, and these said senior citizens homeowners have been placed in very dangerous, hazardous and unsafe living conditions.

40.     Defendants installation of Noise Reduction Wall and I-95 expansion is a government taking subject to inverse condemnation claims.

WHEREFORE, the Plaintiffs request this Court to declare the State and County's actions as a taking under the Florida Constitution, determine the value of the taking, and to grant Plaintiffs claims for inverse condemnation. Further, Plaintiffs seek punitive damages as well as their costs and attorney fees.

## COUNT 3 – BREACH OF CONTRACT

41.     The Plaintiffs are, senior citizens, and owners of property in Miami-Dade County as follows: Ms. Sybel W. Lee, residing at 602 NW 100th Street, Miami, FL 33150; Ms. Mary McMinn residing at 601 NW 99th Street, Miami, FL 33150; and Mr. Nathaniel Williams residing at 600 NW 116th Street, Miami, FL 33150 all now within arm's reach of the I-95

Noise reduction wall. Ms. McMinn has lived in this home since before the I-95 was even constructed, and this highway has expanded to these property owner's back wall.

42.     The State of Florida, Department of Transportation built a Noise Reduction Wall within arm's reach of the Plaintiffs' homes. (See Exhibit 2; County Photos for Relocation Estimates)

43.     Because of the State of Florida's construction Plaintiffs can't flush paper in their toilets, their roofs are collapsing, vibration has destroyed the structure, 18-wheelers have landed in their yards in the middle of the night and Miami-Dade County (the "County") refuses to do improvements (i.e. County won't put in sewer because it is aware vibration would destroy it), and the value of the homes have deteriorated to unsaleable values.

44.     The State of Florida (the "State") proposed condemnation of the Plaintiffs' homes, the Plaintiffs' agreed, but the State never followed through with the purchasing of new homes and relocation of Plaintiffs. (See Exhibit 3; Right of Way Evaluation).

45.     The State of Florida earmarked $1.2 Million to relocate the Plaintiffs but was convinced by Miami-Dade County to do the distribution as part of building a Linear Park in the location of the Plaintiffs' homes through Miami Dade MPO and Parks Department. (See Exhibit 4; Confirmation of Allocation).

46.     In Miami Dade MPO hearings in 2007 and 2012, both with FDOT in participation, the Miami Dade Commission and MPO confirmed receipt of the $1.2 Million to relocate Plaintiffs' but did not perform.  FDOT confirmed allocation to Miami-Dade MPO.

47.     During the July 19, 2012 at a Miami-Dade Metropolitan Planning Organization Board meeting Mr. Zevin Auerbach a Member Municipal Representative advised the Plaintiffs that this matter "smell like corruption" because monies were promised by Miami-Dade County Board of

Commissioners, the Miami-Dade County Clerk of the Board of Commissioners, the Metropolitan Planning Organization ("MPO") and then the funds disappeared.

48.     Miami-Dade County Dist. 3 Commissioners and MPO Board Member a Ms. Audrey Edmonson at a July 19, 2012 Metropolitan Planning Organization meeting read and introduced a letter written by Ms. Vivian Donnell Rodriguez who was the Director of the Miami-Dade Parks and Recreational Department to the governing body. Ms. Edmonson read item #5A3 as reported into the video tape record that pertained to project #416-510-1 written on September 25, 2006 as evidence of the misappropriation of county funds by the Parks and Recreational Department and other agencies earmarked by Florida Department of Transportation and the Federal Highway Administration ("FHWA").

49.     A July 19, 2012, MPO Meeting video tape shows Miami-Dade County Commissioner Audrey Edmonson reading a letter from a Ms. Vivian Donnell Rodriguez, where it said "Dear Ms. McGuire who is over the District Six Planning Office for the Florida Department of Transportation, ("FDOT"). Ms. Vivian Donnell Rodriguez wrote to Ms. McGuire that the purpose of this letter is to withdraw the Miami- Dade Parks and Recreations Department grant application for the 1-95 Linear Park. The objective of the project was for the department to purchase seven properties adjacent to 1-95 between NW 97th and 100th Street excluding the agreement to also originally included 116th Street as part of the homes being purchased and the county would be demolishing the structures on the site.

50.     The properties were later to be developed into a 1 ½ acre linear park in a residential neighborhood in unincorporated Miami-Dade County, Ms. Rodriguez wrote that these properties are no longer for sale." Miami-Dade County Commissioner Audrey Edmonson

put on the record that there was a promise and there were funds approved and granted by FDOT and Miami-Dade County to purchase the Plaintiff's homes." See Miami-Dade County/MPO Meeting Video Tape dated July 19, 2012 on 5A3 reported at 50:08 minutes. (See Exhibit 5; Rodriquez Withdrawal letter).

51.     Miami-Dade County Commissioner Audrey Edmonson said at the 7/19/2012 MPO Board meeting that "she could not explain in the video why Ms. Vivian Donnell Rodriguez said in her letter that the homes were no longer for sale, since the county initially promised to purchase the Plaintiff's homes because of the safety factors of the 1-95 Noise Abatement Wall expansion project and Linear park."

52.     In 2015, Plaintiffs' Commissioner Audrey Edmunson proposed relocating the Plaintiffs' to rectify the non-distribution, but only at current, nominal value of the homes. By this time the homes were valueless, and the senior citizens would not be able to afford adequate housing.

53.     To complete the cycle of government failing its senior citizens, in 2016 the Plaintiffs made complaints to the FBI, who transferred the matter to Miami-Dade Office of Inspector ("General ("OIG"), who then dropped the matter without notifying Plaintiffs because OIG was told relied on Vivian Rodriguez letter that the Plaintiffs no longer wanted to relocate.

54.     Unable to afford representation, Plaintiffs filed a pro se case in the United State Southern District (Case No. 16-23651), but were unable to figure out to serve the Defendants under Fla. Stat. § 768.28 and generally; so the matter was dismissed by the Honorable Judge Goodman on 3/29/2017 for PAPERLESS ORDER DISMISSING CASE WITHOUT PREJUDICE FOR FAILURE TO SERVE. (see Exhibit 6; Docket Print Out).

55.     The location of the home next to the 1-95 deprive the Plaintiffs of all beneficial use of the

properties and has removed all value of the properties.

56.     Funds were confirmed distributed to Miami Dade County to relocate the Plaintiffs in Mr. Oscar Brannon in a meeting with Plaintiffs Carey-Schuler's office, at the time Brannon the assistant to Commission Dr. Barbara Carey-Schuler.

57.     This arrangement was never fulfilled, and these said senior citizens homeowners have been placed in very dangerous, hazardous and unsafe living conditions.

58.     The Defendants have breached the contract to build the wall, expand the I-95 and relocated the Plaintiffs during the process.

59.     The Plaintiffs have been and continued to be damaged by the Defendants willful and on going breach.

WHEREFORE, the Plaintiffs seek $1.2 Million in damages plus interest under the original relationship with FDOT as well as the purchasing of new homes (with mortgages) and relocation expenses.  Further, Plaintiffs seek punitive damages as well as their costs and attorney fees.

## COUNT 4 – TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP

60.     The Plaintiffs are, senior citizens, and owners of property in Miami-Dade County as follows: Ms. Sybel W. Lee, residing at 602 NW 100th Street, Miami, FL 33150; Ms. Mary McMinn residing at 601 NW 99th Street, Miami, FL 33150; and Mr. Nathaniel Williams residing at 600 NW 116th Street, Miami, FL 33150 all now within arm's reach of the I-95 Noise reduction wall. Ms. McMinn has lived in this home since before the I-95 was even constructed, and this highway has expanded to these property owner's back wall.

61.     The State of Florida, Department of Transportation built a Noise Reduction Wall within arm's reach of the Plaintiffs' homes. (See Exhibit 2; County Photos for Relocation Estimates)

62.     Because of the State of Florida's construction Plaintiffs can't flush paper in their toilets, their roofs are collapsing, vibration has destroyed the structure, 18-wheelers have landed in their yards in the middle of the night and Miami-Dade County (the "County") refuses to do improvements (i.e. County won't put in sewer because it is aware vibration would destroy it), and the value of the homes have deteriorated to unsaleable values.

63.     The State of Florida (the "State") proposed condemnation of the Plaintiffs' homes, the Plaintiffs' agreed, but the State never followed through with the purchasing of new homes and relocation of Plaintiffs. (See Exhibit 3; Right of Way Evaluation).

64.     The State of Florida earmarked $1.2 Million to relocate the Plaintiffs but was convinced by Miami-Dade County to do the distribution as part of building a Linear Park in the location of the Plaintiffs' homes through Miami Dade MPO and Parks Department. (See Exhibit 4; Confirmation of Allocation).

65.     In Miami Dade MPO hearings in 2007 and 2012, both with FDOT in participation, the Miami Dade Commission and MPO confirmed receipt of the $1.2 Million to relocate Plaintiffs' but did not perform.  FDOT confirmed allocation to Miami-Dade MPO.

66.     During the July 19, 2012 at a Miami-Dade Metropolitan Planning Organization Board meeting Mr. Zevin Auerbach a Member Municipal Representative advised the Plaintiffs that this matter "smell like corruption" because monies were promised by Miami-Dade County Board of Commissioners, the Miami-Dade County Clerk of the Board of Commissioners, the Metropolitan Planning Organization ("MPO") and then the funds disappeared.

67.     Miami-Dade County Dist. 3 Commissioners and MPO Board Member a Ms. Audrey Edmonson at a July 19, 2012 Metropolitan Planning Organization meeting read and introduced a letter written by Ms. Vivian Donnell Rodriguez who was the Director of the Miami-Dade Parks and Recreational Department to the governing body. Ms. Edmonson read item *#5A3* as reported into the video tape record that pertained to project #416-510-1 written on September 25, 2006 as evidence of the misappropriation of county funds by the Parks and Recreational Department and other agencies earmarked by Florida Department of Transportation and the Federal Highway Administration ("FHWA").

68.     A July 19, 2012, MPO Meeting video tape shows Miami-Dade County Commissioner Audrey Edmonson reading a letter from a Ms. Vivian Donnell Rodriguez, where it said "Dear Ms. McGuire who is over the District Six Planning Office for the Florida Department of Transportation. Ms. Vivian Donnell Rodriguez wrote to Ms. McGuire that the purpose of this letter is to withdraw the Miami- Dade Parks and Recreations Department grant application for the 1-95 Linear Park. The objective of the project was for the department to purchase seven properties adjacent to 1-95 between NW 97th and 100th Street excluding the agreement to also originally included 116th Street as part of the homes being purchased and the county would be demolishing the structures on the site.

69.     The properties were later to be developed into a 1 ½ acre linear park in a residential neighborhood in unincorporated Miami-Dade County, Ms. Rodriguez wrote that these properties are no longer for sale." Miami-Dade County Commissioner Audrey Edmonson put on the record that there was a promise and there were funds approved and granted by FDOT and Miami-Dade County to purchase the  Plaintiff's homes." See Miami-Dade

County/MPO Meeting Video Tape dated July 19, 2012 on 5A3 reported at 50:08 minutes. (See Exhibit 5; Rodriquez Withdrawal letter).

70.    Miami-Dade County Commissioner Audrey Edmonson said at the 7/19/2012 MPO Board meeting that "she could not explain in the video why Ms. Vivian Donnell Rodriguez said in her letter that the homes were no longer for sale, since the county initially promised to purchase the Plaintiff's homes because of the safety factors of the 1-95 Noise Abatement Wall expansion project and Linear park."

71.    In 2015, Plaintiffs' Commissioner Audrey Edmunson proposed relocating the Plaintiffs' to rectify the non-distribution, but only at current, nominal value of the homes. By this time the homes were valueless, and the senior citizens would not be able to afford adequate housing.

72.    To complete the cycle of government failing its senior citizens, in 2016 the Plaintiffs made complaints to the FBI, who transferred the matter to Miami-Dade Office of Inspector General ("OIG"), who then dropped the matter without notifying Plaintiffs because OIG was told relied on Vivian Rodriguez letter that the Plaintiffs no longer wanted to relocate.

73.    Unable to afford representation, Plaintiffs filed a pro se case in the United State Southern District (Case No. 16-23651), but were unable to figure out to serve the Defendants under Fla. Stat. § 768.28 and generally; so the matter was dismissed by the Honorable Judge Goodman on 3/29/2017 for PAPERLESS ORDER DISMISSING CASE WITHOUT PREJUDICE FOR FAILURE TO SERVE. (see Exhibit 6; Docket Print Out).

74.    The location of the home next to the 1-95 deprive the Plaintiffs of all beneficial use of the properties and has removed all value of the properties.

75.    Funds were confirmed distributed to Miami Dade County to relocate the Plaintiffs in Mr.

Oscar Brannon in a meeting with Plaintiffs Carey-Schuler's office, at the time Brannon the assistant to Commission Dr. Barbara Carey-Schuler.

76.     This arrangement was never fulfilled, and these said senior citizens homeowners have been placed in very dangerous, hazardous and unsafe living conditions.

77.     The Plaintiffs worked out a business relationship with the FDOT to relocate them while having the condemnation go through Miami-Dade County.

78.     FDOT distributed the monies to Miami-Dade County who failed to relocate the Plaintiffs with the funds.

79.     Miami-Dade County failed with knowledge that the funds from FDOT were to be used to relocate the Plaintiffs.

80.     The County's interference was intentional and unjustified, even for its own advantage.

81.     The Plaintiffs have been and continued to be damaged by the Defendants willful and ongoing interference.

WHEREFORE, the Plaintiffs seek $1.2 Million in damages plus interest under the original relationship with FDOT as well as the purchasing of new homes (with mortgages) and relocation expenses.  Further, Plaintiffs seek punitive damages as well as their costs and attorney fees.

## COUNT 5– VIOLATION OF THE FEDERAL-AID HIGHWAY ACT 23 U.S.C.A §101 et seq.

82.     The Plaintiffs are, senior citizens, and owners of property in Miami-Dade County as follows: Ms. Sybel W. Lee, residing at 602 NW 100th Street, Miami, FL 33150; Ms. Mary

McMinn residing at 601 NW 99th Street, Miami, FL 33150; and Mr. Nathaniel Williams residing at 600 NW 116th Street, Miami, FL 33150 all now within arm's reach of the I-95 Noise reduction wall. Ms. McMinn has lived in this home since before the I-95 was even constructed, and this highway has expanded to these property owner's back wall.

83.     The State of Florida, Department of Transportation built a Noise Reduction Wall within arm's reach of the Plaintiffs' homes. (See Exhibit 2; County Photos for Relocation Estimates)

84.     Because of the State of Florida's construction Plaintiffs can't flush paper in their toilets, their roofs are collapsing, vibration has destroyed the structure, 18-wheelers have landed in their yards in the middle of the night and Miami-Dade County (the "County") refuses to do improvements (i.e. County won't put in sewer because it is aware vibration would destroy it), and the value of the homes have deteriorated to unsaleable values.

85.     The State of Florida (the "State") proposed condemnation of the Plaintiffs' homes, the Plaintiffs' agreed, but the State never followed through with the purchasing of new homes and relocation of Plaintiffs. (See Exhibit 3; Right of Way Evaluation).

86.     The State of Florida earmarked $1.2 Million to relocate the Plaintiffs but was convinced by Miami-Dade County to do the distribution as part of building a Linear Park in the location of the Plaintiffs' homes through Miami Dade MPO and Parks Department. (See Exhibit 4; Confirmation of Allocation).

87.     In Miami Dade MPO hearings in 2007 and 2012, both with FDOT in participation, the Miami Dade Commission and MPO confirmed receipt of the $1.2 Million to relocate Plaintiffs' but did not perform.  FDOT confirmed allocation to Miami-Dade MPO.

88.     During the July 19, 2012 at a Miami-Dade Metropolitan Planning Organization Board

meeting Mr. Zevin Auerbach a Member Municipal Representative advised the Plaintiffs that this matter "smell like corruption" because monies were promised by Miami-Dade County Board of Commissioners, the Miami-Dade County Clerk of the Board of Commissioners, the Metropolitan Planning Organization ("MPO") and then the funds disappeared.

89.    Miami-Dade County Dist. 3 Commissioners and MPO Board Member a Ms. Audrey Edmonson at a July 19, 2012 Metropolitan Planning Organization meeting read and introduced a letter written by Ms. Vivian Donnell Rodriguez who was the Director of the Miami-Dade Parks and Recreational Department to the governing body. Ms. Edmonson read item #5A3 as reported into the video tape record that pertained to project #416-510-1 written on September 25, 2006 as evidence of the misappropriation of county funds by the Parks and Recreational Department and other agencies earmarked by Florida Department of Transportation (FDOT) and the Federal Highway Administration (FHWA).

90.    A July 19, 2012, MPO Meeting video tape shows Miami-Dade County Commissioner Audrey Edmonson reading a letter from a Ms. Vivian Donnell Rodriguez, where it said "Dear Ms. McGuire who is over the District Six Planning Office for the Florida Department of Transportation. Ms. Vivian Donnell Rodriguez wrote to Ms. McGuire that the purpose of this letter is to withdraw the Miami- Dade Parks and Recreations Department grant application for the 1-95 Linear Park. The objective of the project was for the department to purchase seven properties adjacent to 1-95 between NW 97th and 100th Street excluding the agreement to also originally included 116th Street as part of the homes being purchased and the county would be demolishing the structures on the site.

91.    The properties were later to be developed into a 1 ½ acre linear park in a residential

neighborhood in unincorporated Miami-Dade County, Ms. Rodriguez wrote that these properties are no longer for sale." Miami-Dade County Commissioner Audrey Edmonson put on the record that there was a promise and there were funds approved and granted by FOOT and Miami-Dade County to purchase the Plaintiff's homes." See Miami-Dade County/MPO Meeting Video Tape dated July 19, 2012 on 5A3 reported at 50:08 minutes. (See Exhibit 5; Rodriquez Withdrawal letter).

92. Miami-Dade County Commissioner Audrey Edmonson said at the 7/19/2012 MPO Board meeting that "she could not explain in the video why Ms. Vivian Donnell Rodriguez said in her letter that the homes were no longer for sale, since the county initially promised to purchase the Plaintiff's homes because of the safety factors of the 1-95 Noise Abatement Wall expansion project and Linear park."

93. In 2015, Plaintiffs' Commissioner Audrey Edmunson proposed relocating the Plaintiffs' to rectify the non-distribution, but only at current, nominal value of the homes. By this time the homes were valueless, and the senior citizens would not be able to afford adequate housing.

94. To complete the cycle of government failing its senior citizens, in 2016 the Plaintiffs made complaints to the FBI, who transferred the matter to Miami-Dade Office of Inspector General ("OIG"), who then dropped the matter without notifying Plaintiffs because OIG was told relied on Vivian Rodriguez letter that the Plaintiffs no longer wanted to relocate.

95. Unable to afford representation, Plaintiffs filed a pro se case in the United State Southern District (Case No. 16-23651) but were unable to figure out to serve the Defendants under Fla. Stat. § 768.28 and generally; so, the matter was dismissed by the Honorable Judge Goodman on 3/29/2017 for PAPERLESS ORDER DISMISSING CASE WITHOUT PREJUDICE FOR

FAILURE TO SERVE. (see Exhibit 6; Docket Print Out).

96.     The location of the home next to the 1-95 deprive the Plaintiffs of all beneficial use of the properties and has removed all value of the properties.

97.     Funds were confirmed distributed to Miami Dade County to relocate the Plaintiffs in Mr. Oscar Brannon in a meeting with Plaintiffs Carey-Schuler's office, at the time Brannon the assistant to Commission Dr. Barbara Carey-Schuler.

98.     This arrangement was never fulfilled, and these said senior citizens homeowners have been placed in very dangerous, hazardous and unsafe living conditions.

99.     Under 23 U.S.C.A. §108, funds were allocated as part of the Noise Reduction Wall and I-95 expansion by the United State government to FDOT to acquire certain properties.

100.     FDOT distributed the monies to acquire certain properties to Miami-Dade County who failed to relocate the Plaintiffs with the funds.

101.     Miami-Dade County and the State of Florida stay in awareness that funds were not allocated to Plaintiffs and Plaintiffs were not relocated in violation of the Federal-Aid Highway Act.

102.     The Defendants' allocations to parties other than the Plaintiffs is intentional and with knowledge.

103.     The Plaintiffs have been and continued to be damaged by the Defendants willful and ongoing failures.

        WHEREFORE, the Plaintiffs seek $1.2 Million in damages plus interest under the original relationship with FDOT as well as the purchasing of new homes (with mortgages) and relocation expenses. Further, Plaintiffs seek punitive damages as well as their costs

and attorney fees.

**s/Matt Person**_____
Matthew Ty Person
Florida Bar No.: 0103754
Email: mtyperson@gmail.com
Secondary Email: service_personlaw@yahoo.com
Person Law
565 N.E. 66th Street, Suite 1
Miami, Florida 33138
Telephone: (305) 640-5754
Facsimile: (888) 602-4190
Attorney for Plaintiffs