United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Sybel W. Lee and others, Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 18-21852-Civ-Scola |
| Miami-Dade County and State of ) | |
| Florida Department of ) | |
| Transportation, Defendants. ) | |

**Order on Motions to Dismiss**

This lawsuit arises from a years-long saga stemming from the construction of a noise reduction wall along Interstate 95 ("I-95"). The Plaintiffs are property owners who contend that they were promised that Miami-Dade County would purchase their homes, which are located near the noise reduction wall and I-95, and relocate them. Before the Court now are the motions to dismiss (ECF Nos. 18, 28) filed by Defendants Miami-Dade County (the "County"), and the State of Florida's Department of Transportation (the "FDOT"). Upon consideration of the parties' briefs, the relevant legal authorities, and the record, the Court **grants** the Defendants' motions to dismiss (**ECF Nos. 18, 28**).

**I. Background**

The facts described below stem from the Plaintiffs' Complaint and the contents of the exhibits they attached to the Complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). The Court has relied on the contents of the exhibits to the extent they conflict with the allegations presented in the Complaint. *Reed v. Clough*, 694 F. App'x 716, 721 (11th Cir. 2017). Despite being represented by counsel, the Plaintiffs' Complaint lacks relevant information regarding critical events and misconstrues certain of the exhibits attached to the Complaint. Notwithstanding this, the Court has attempted to piece together the relevant facts.

The Plaintiffs are a group of senior citizens who own property in Miami-Dade County near I-95 and the corresponding noise reduction wall that was built more than 10 years ago. (*See, e.g.*, Compl., ECF No. 1 at ¶¶ 5, 6.) The Plaintiffs allege that the noise reduction wall has affected their living conditions and has impacted the value of their homes. (*See, e.g., id.* at ¶ 7.) They claim

that they had initially agreed with the State of Florida's proposal to condemn their homes, but that this plan never came to fruition. (*See, e.g., id.* at ¶ 8.) Eventually, the plan for their homes became part of the County's grant application to the FDOT to build I-95 Linear Park, a one and a half acre linear park that was going to be built where the Plaintiffs' homes are located. (*See, e.g., id.* at ¶¶ 8, 13–14; Sept. 2006 Letter, ECF No. 1-5.)

As of August 2005, the County was in discussions with Karen McGuire from the District VI Planning Office of the FDOT about I-95 Linear Park and how much it would cost to acquire, relocate, and demolish the sites needed to create the park. (August 2005 Letter, ECF No. 1-4.) In a letter from August 15, 2015 from Barbara Falsey, the Chief of the County's Planning and Research Division to McGuire, Falsey asked McGuire for an updated estimate of the relevant costs. (*Id.*) It was her understanding at the time that the project would cost more than the then-budgeted $781,000 and that they had discussed a figure of $1.2 million instead. (*Id.*) Although the Plaintiffs cite to this letter as proof that the State of Florida had earmarked $1.2 million to relocate them, *see, e.g.*, ECF No. 1 at ¶ 9, the letter neither states nor suggests that. The Plaintiffs allege that some point, however, in a meeting with Commissioner Dr. Barbara Carey-Schuler's assistant, Oscar Brannon, it had been confirmed that some funds had been distributed to the County to relocate them. (*See, e.g., id.* at ¶ 20.)

In a letter dated September 25, 2006, Vivian Donnell Rodriguez, the Director of the County's Park and Recreation Department informed McGuire that the County's Park and Recreation Department was withdrawing its grant application for the I-95 Linear Park. (Sept. 2006 Letter, ECF No. 1-5.) The letter stated that the properties that the Park and Recreation Department intended to purchase for the project were "no longer for sale." (*Id.*)

The Plaintiffs, who had not yet been relocated, then appeared before the County's Metropolitan Planning Organization ("MPO") at a hearing in 2007. (*See, e.g.*, Compl., ECF No. 1 at ¶ 10.) The Plaintiffs claim that at the 2007 hearing, "the Miami Dade Commission and MPO confirmed receipt of the $1.2 Million to relocate the Plaintiffs but did not perform." (*See, e.g., id.*)

In December 2007, emails were exchanged between employees from the FDOT and the County regarding the cost of purchasing the Plaintiffs' homes, among others, as part of the I-95 Linear Park proposal. (*See* Emails, ECF No. 1-3). On December 18, 2007, the FDOT estimated that the cost of the project would be $3,410,700. (*Id.*) It is unclear from the Complaint or the exhibits whether the I-95 Linear Park project was revived at this point.

Years later, on July 9, 2012, the MPO again considered the Plaintiffs' issues at a hearing. At that hearing, Commissioner Audrey Edmonson referred

to the September 25, 2006 letter from Rodriguez to McGuire and raised concerns about the lack of clarity regarding what happened to the plans of purchasing the Plaintiffs' homes since it appeared that the County had initially promised to purchase them. (*See, e.g.*, Compl., ECF No. 1 at ¶¶ 12–15.) Zevin Auerbach, an MPO member, stated that this "smell[ed] like corruption." (*See, e.g., id..* at ¶ 11.)

In 2015, Commissioner Edmonson proposed purchasing the homes at their current, nominal values. (*See, e.g., id.* at ¶ 16.) However, the Plaintiffs allege that at this point, the homes were valueless and they would not be able to afford adequate housing. (*See, e.g., id.*)

In 2016, the Plaintiffs made complaints to the Federal Bureau of Investigation ("FBI"), who transferred the matter to the Miami-Dade Office of Inspector General ("OIG"). (*See, e.g.*, ECF No. 1 at ¶ 17.) The OIG then dropped the matter because of Rodriguez's letter and its belief that the Plaintiffs no longer wanted to relocate. (*See, e.g., id.*)

Then, that same year, the Plaintiffs filed a pro se complaint regarding these matters. Judge Jose E. Martinez dismissed that case because the Plaintiffs failed to properly serve the defendants. *See* Case No. 16-23651, ECF No. 19.

Now, the Plaintiffs, represented by counsel, present five claims against the FDOT and the County: (1) a federal inverse condemnation claim (Count I); (2) a state-law inverse condemnation claim (Count II); (3) a breach of contract claim (Count III); (4) a tortious interference claim (Count IV); and (5) a claim under the Federal Aid Highway Act, 23 U.S.C. § 101 (Count V).

The FDOT and the County filed motions to dismiss (ECF No. 18, 28). Although the Plaintiffs responded to the FDOT's motion (ECF No. 21), the Plaintiffs did not file a response to the County's motion. Instead, the Plaintiffs filed a motion for leave to amend their Complaint (ECF No. 34), which Magistrate Judge Edwin G. Torres denied after full briefing from the parties (ECF No. 42).

In its motion to dismiss, the FDOT mainly argues that it is immune from suit under the Eleventh Amendment and sovereign immunity principles. The County presents several arguments in its motion to dismiss. It contends that the Plaintiffs' claims are all barred by their corresponding statutes of limitations, that the complaint is a shotgun pleading, and that the Plaintiffs have failed to state a single claim. The County also argues that punitive damages cannot be asserted against it.

## II. Legal Standard

The FDOT's motion is submitted pursuant to Federal Rule of Civil Procedure 12(b)(1). Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms: "facial attacks" and "factual attacks." *Lawrence v. Dunbar,* 919 F.2d 1525, 1528-29 (11th Cir. 1990). Facial challenges to subject matter jurisdiction are based solely on the allegations in the complaint. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). Thus, the court will "look at the face of the complaint and determine whether the plaintiff has alleged a sufficient basis for subject matter jurisdiction." *Scelta v. Delicatssen Support Servs., Inc.*, No. 98–2578–CIV–T–17B, 1999 WL 1053121, at *4 (M.D. Fla. Oct. 7, 1999) (citations omitted). Factual attacks, on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings," and the court will consider "matters outside the pleadings, such as testimony and affidavits." *Lawrence*, 919 F.2d at 1529 (internal quotation marks omitted). Since the FDOT's motion is based primarily on Eleventh Amendment immunity, the Court construes the FDOT's motion as a facial attack on subject matter jurisdiction. *See Madison v. Dep't of Juvenile Justice*, No. 1:18-cv-00484-TWT-JFK, 2018 WL 4214421, at *1 (N.D. Ga. Aug. 18, 2018), *report and recommendation adopted in* No. 1:18-cv-484-TWT, 2018 WL 4078436 (N.D. Ga. Aug. 27, 2018).[1]

The County relies on Rule 12(b)(6) in its motion. Courts considering a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff(s). *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A

---

[1] The Court previously allowed the Plaintiffs to submit video evidence in support of their response to the FDOT's motion to dismiss because they claimed that the FDOT had raised a ripeness argument that they could refute with the video evidence. Upon further review of the FDOT's motion, the Court finds that the FDOT did not raise a ripeness argument and instead presents a facial attack under Rule 12(b)(1). Accordingly, the Court did not consider the video evidence in evaluating the FDOT's motion to dismiss. However, the Court is aware that the Plaintiffs assert that they raised their concerns with the MPO and other officials.

court must dismiss a plaintiff's claims if he or she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Despite the County's reliance on Rule 12(b)(6), it also presents several statute of limitations arguments, which are considered attacks on the Court's subject matter jurisdiction. *RB Jai Alai, LLC v. Sec'y of Fla. Dep't of Transp.*, 47 F. Supp. 3d 1353, 1359 (M.D. Fla. 2014). Some courts have found that these types of challenges require looking beyond the four corners of the complaint. *See id.*

III. Analysis

A. The FDOT's Eleventh Amendment Immunity

"The Eleventh Amendment [to the United States Constitution] prohibits federal courts from exercising subject matter jurisdiction in suits brought against a state by a citizen of that state." *Kaimowitz v. The Fla. Bar*, 996 F.2d 1151, 1155 (11th Cir. 1993) (quoting *Schopler v. Bliss*, 903 F.2d 1373, 1378 (11th Cir. 1990)). It also bars suits brought against a state by its own citizens and against state agencies. *Brown v. Fla. Dep't of Revenue Office of Child Support Enf't*, 697 F. App'x 692, 692 (11th Cir. 2017). The Eleventh Amendment, however "does not reach lawsuits against municipalities and other discrete political subdivisions that are sufficiently independent from the state." *Schopler*, 903 F.2d at 1378.

The Eleventh Circuit has explained that the immunity provided by the Eleventh Amendment has its exceptions:

> The Supreme Court has recognized three situations in which there is a "surrender" of Eleventh Amendment sovereign immunity: (1) when a state waives its Eleventh Amendment sovereign immunity and consents to suit in federal court; (2) when Congress, acting pursuant to § 5 of the Fourteenth Amendment, abrogates a state's Eleventh Amendment sovereign immunity by expressing an unequivocal intent to do so; and (3) when a state official is sued for prospective injunctive relief to end a continuing violation of federal law.

*Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1278 (11th Cir. 1998) (internal citations omitted). The FDOT is a state agency, *see* Fla. Stat. § 20.23, that is protected by the Eleventh Amendment unless one of the exceptions to immunity apply.

The Court finds that none of the recognized exceptions apply. The Court can easily dispose of the last exception because this is not a suit brought against a state official for prospective injunctive relief.

Further, the FDOT has not consented to suit or waived its immunity. The Plaintiffs cite to Florida Statutes § 768.28, which waives the State of Florida's sovereign immunity in *state* court proceedings involving tort actions, in support of their theory that the FDOT is subject to suit in this case. The language of § 768.28(18) specifically states that:

> No provision of this section, or of any other section of the Florida Statutes . . . shall be construed to waive the immunity of the state or any of its agencies from suit in *federal court,* as such immunity is guaranteed by the Eleventh Amendment to the Constitution of the United States, unless such waiver is explicitly and definitely stated to be a waiver of the immunity of the state and its agencies from suit in federal court.

Fla. Stat. § 768.28(18) (emphasis added). The Eleventh Circuit has also explicitly held that "[§] 768.28 does not waive Florida's Eleventh Amendment immunity" in federal court. *Schoper v. Bliss*, 903 F.2d 1373, 1379 (11th Cir. 1990). Accordingly, § 768.28 does not serve as a basis to find waiver.

There is also no indication that Congress has abrogated Eleventh Amendment immunity for this type of case. To the extent the Plaintiffs contend that the Supreme Court in *Fitzpatrick v. Bitzer,* 427 U.S. 445 (1976), suggests otherwise, the Court is unpersuaded. In *Fitzpatrick*, the Supreme Court held that the Eleventh Amendment was limited by the enforcement provisions of Section 5 of the Fourteenth Amendment, which grants Congress the authority to enact legislation to enforce the substantive provisions of the Fourteenth Amendment. *Fitzpatrick*, 427 U.S. at 456. So, *Fitzpatrick* merely recognizes that Congress has the power to provide for private suits against states or state officials that are immune from suit. *Id.* Here, the Plaintiffs have failed to point to a federal statute that would permit this lawsuit to move forward against FDOT.

Moreover, the Plaintiffs' argument that the Eleventh Amendment does not apply to federal takings claims ignores Eleventh Circuit precedent that indicates that takings claims can be barred by the Eleventh Amendment if no exceptions are present. *See Harbert*, 157 F.3d at 1279 (holding that the plaintiff's Fifth Amendment takings clause claim was barred by Eleventh Amendment sovereign immunity); *Hemperly v. Crumpton*, 708 F. Supp. 1247, 1249–50 (M.D. Ala. 1988) (holding that the Eleventh Amendment barred suit

against state agency in takings case). Without an applicable exception, the Court finds that FDOT is immune from suit. All claims against FDOT are therefore dismissed.

## B. Inverse Condemnation Claims

The Plaintiffs assert two separate inverse condemnation claims that are almost, if not totally, identical. With immunity granted to the FDOT, the Court focuses solely on the application of these claims against the County. The County argues in its motion to dismiss that the inverse condemnation claims are barred by the applicable four-year statute of limitations and that because the inverse condemnation claim stems from the construction of the noise reduction wall, which the County is not responsible for, the Plaintiffs have failed to state a claim against them.

Upon review of the Plaintiffs' allegations, the Court agrees with the County to the extent it argues that the Plaintiffs' federal inverse condemnation claim arises from actions taken by the State of Florida or the FDOT, not the County. The Plaintiffs allege that the "Defendants['] installation of [the] Noise Reduction Wall and I-95 expansion is a government taking subject to inverse condemnation claims." (Compl., ECF No. 1 at ¶ 22.) Yet, the only allegation regarding the construction of the noise reduction wall is attributed to the FDOT. (*See id.* at ¶ 6.) There are no allegations that the County constructed the noise reduction wall or I-95. To the extent the Plaintiffs believe that the County caused inverse condemnation by failing to purchase their homes, such a claim is not clearly alleged in the Complaint.

Even if the Court were to assume that the Plaintiffs have stated a claim against the County, the Court finds that the federal inverse condemnation claim is not yet ripe for review. Although the County did not raise the ripeness issue, the Court has the obligation to raise jurisdictional issues such as ripeness *sua sponte. See Kelly v. Harris*, 331 F.3d 817, 819 (11th Cir. 2003).

The Supreme Court has defined "inverse condemnation" as "a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." *Bensch v. Metro. Dade Cty.*, 952 F. Supp. 790, 795 (S.D. Fla. 1996) (Hoeveler, J.) (quoting *United States v. Clarke,* 445 U.S. 253, 257 (1980)). "Inverse condemnation actions brought under the Fifth Amendment are subject to a ripeness requirement which flows from this Court's case or controversy-based jurisdiction." *Id.* Accordingly, the question of ripeness "goes to whether the district court had subject matter jurisdiction." *Reahard v. Lee Cty.*, 30 F.3d 1412, 1415 (11th Cir. 1994).

The Eleventh Circuit has held that in a takings case arising in Florida, "a plaintiff must first exhaust administrative remedies, then seek inverse condemnation in state court; only if both of those are unsuccessful may a plaintiff attempt to bring suit in federal court under the Fifth Amendment's Takings Clause." *126th Ave. Landfill, Inc. v. Pinellas Cty., Fla.*, 459 F. App'x 896, 898 (11th Cir. 2012). As such, "a takings claim is not ripe until all avenues of compensation at the state level have been exhausted." *Hadar v. Broward Cty.*, 692 F. App'x 618, 620 (11th Cir. 2017) (quoting *Fields v. Sarasota Manatee Airport Auth.*, 953 F.2d 1299, 1303 (11th Cir. 1992)). Despite this requirement, however, a property owner's claim "brought directly in federal court will be ripe if (1) the state law provides him no process for obtaining just compensation (such an action for inverse condemnation), or (2) the state law appears to provide such process, but due to state interpretation, the process is inadequate." *Id.* (internal quotation marks and citations omitted).

To the extent the Court could even construe the Plaintiffs attempts to raise their concerns to the MPO and other officials as attempts to exhaust their administrative remedies, there is no indication in the record that the Plaintiffs sought relief in state court. Further, the Plaintiffs do not allege that a state process is unavailable to them, nor could they. Florida law "recognizes a cause of action for inverse condemnation when a government agency has taken private property without a formal exercise of the power of eminent domain." *Id.* (internal quotation marks and citations omitted). The Court finds that cases involving noise pollution from airplane runways particularly analogous to the noise complaints alleged by the Plaintiffs, *see id.*, which Florida courts have analyzed under inverse condemnation principles. *See, e.g., City of Jacksonville v. Schumann*, 199 So. 2d 727, 729 (Fla. 1st DCA 1967). And, the Plaintiffs have not alleged that Florida's remedies are somehow inadequate. Accordingly, the Court finds that the federal inverse condemnation claim is not yet ripe.

The same cannot be said for the state-law inverse condemnation claim (Count II). In fact, the Eleventh Circuit and lower courts have held that even when a federal inverse condemnation claim is not ripe for review, a court may still have jurisdiction to consider a corresponding state-law inverse condemnation claim. *See Watson Construction Co. v. City of Gainesville*, 244 F. App'x 274, 277–78 (11th Cir. 2007) (holding that the district court erred in dismissing state-law inverse condemnation claim for lack of jurisdiction on ripeness grounds); *Business Realty Inv. Co., Inc. v. Jefferson Cty., Ala.*, No. 2:09-cv-01139-HGD, 2011 WL 13140665, at *2 (N.D. Ala. Aug. 1, 2011) (allowing the plaintiff to amend complaint to add an inverse condemnation under Alabama law because it found that the ripeness rationale did not apply

to state law inverse condemnation claims). Accordingly, the Court cannot dismiss Count II on ripeness grounds.

### C. The Federal-Aid Highway Act Claim (Count V)

Given the Court's rulings thus far, Count V, which alleges a violation of the Federal-Aid Highway Act ("FAHA"), 23 U.S.C. § 101, *et seq.*, is the only federal claim remaining against the County. The Plaintiffs allege that federal funds were allocated to the FDOT under 23 U.S.C. § 108 to acquire the Plaintiffs' properties and that the FDOT distributed those funds to the County, which then failed to relocate the Plaintiffs with those funds. (Compl., ECF No. 1 at ¶ 100.) They allege that the FDOT and/or County's failure to relocate the Plaintiffs is a violation of the FAHA. (*See id.* at ¶ 101.) The County argues that this claim was not properly asserted and that even if it was, it is barred by the relevant statute of limitations. The Plaintiffs did not respond to any of the County's arguments. Upon review of the County's motion, the Court finds that dismissal of Count V is warranted.

As the County points out, the FAHA does not create a private right of action. *RB Jai Alai, LLC*, 47 F. Supp. 3d at 1366. Any dispute under the FAHA must be brought under the Administrative Procedure Act ("APA"). *Id.* "Pursuant to the APA, '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." *Id.* at 1366 (quoting 5 U.S.C. § 702). An APA claim begins to accrue at the time of a final agency action and has a statute of limitations period of six years. *Id.* at 1365.

The Plaintiffs did not refer to the APA in Count V, nor is it clear what agency action the Plaintiffs could be referring to and when that action was taken for purposes of assessing whether this claim is barred by the statute of limitations. Without a response from the Plaintiffs on this issue, the Court must dismiss this claim.

### D. State Law Claims

The remaining claims are state-law claims against the County. Although the Plaintiffs allege that this Court has federal question jurisdiction and diversity jurisdiction, *see* ECF No. 1 at ¶ 2, the face of the complaint indicates that the parties are not diverse. So, the only basis for this Court's jurisdiction is federal question jurisdiction. *See* 28 U.S.C. § 1331. As such, the only way this Court could consider the state-law claims asserted by the Plaintiffs would be via supplemental jurisdiction, as defined in 28 U.S.C. § 1367. The Plaintiffs, however, did not cite to 28 U.S.C. § 1367 in their complaint. The Plaintiffs did, however, cite to 28 U.S.C. § 1367 as a basis for the Court's supplemental

jurisdiction in their response to the FDOT's motion to dismiss. (Response, ECF No. 21 at 5.)

Even assuming that the Court had supplemental jurisdiction over these claims at the initiation of this case, the Court declines to exercise jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). The Supreme Court in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988) explained:

> Under [*Mine Workers v. Gibbs*, 383 U.S. 715 (1966)], a federal court should consider and weigh in each case . . . the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.

*Id.* at 350.

"[T]he doctrine of pendent jurisdiction . . . is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Id.* Upon the Court's review of the claims and the relevant factors, the Court declines to exercise jurisdiction over the remaining claims. The remaining claims are state-law claims that are best evaluated by a Florida state court, especially since there are potential statute of limitations issues. Further, if the Plaintiffs want to pursue their federal inverse condemnation claims, they must first seek relief in state court. The Court therefore dismisses the remaining counts (Counts II, III, and IV).

### IV. Conclusion

For the reasons set forth above, the Court **grants** FDOT's motion to dismiss (**ECF No. 18**) and the County's motion to dismiss (**ECF No. 28**). The Plaintiffs' complaint (**ECF No. 1**) is **dismissed without prejudice**. The Clerk is directed to **close** this case.

**Done and ordered** at Miami, Florida on December 6, 2018.

_____
Robert N. Scola, Jr.
United States District Judge